NO. 23-60316

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

JOSEPH PAPIN

*Plaintiff – Appellant / Cross – Appellee*

v.

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER

*Defendant – Appellee / Cross – Appellant*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
CIVIL ACTION NO. 3:17-CV-00763-KHJ-FKB

_____

**REPLY BRIEF OF CROSS-APPELLANT**

_____

Paul B. Watkins, Jr. (MB No. 102348)
J. Andrew Mauldin (MB No. 104227)
Mayo Mallette PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone:  (662) 236-0055
Facsimile:  (662) 236-0035
pwatkins@mayomallette.com
dmauldin@mayomallette.com

# TABLE OF CONTENTS

Table of Contents ...................................................................................................i

Table of Authorities ............................................................................................. ii

1. The audit trail document should not have been admitted ......................................1

2. Plaintiff's educational expenses should not have been admitted ..........................3

3. The jury instructions were erroneous...................................................................4

Conclusion ............................................................................................................6

Certificate of Compliance .....................................................................................8

# TABLE OF AUTHORITIES

1. ***The audit trail document should not have been admitted.***

Papin's arguments about Exhibit P-40, the "audit trail" document, are based on a skewed reading of the trial testimony about that document. Papin did not testify, as he now claims, that he was "fully familiar with UMMC's audit trails and knew all about each distinct facet of" the exhibit at issue. Br., at 38 [Doc. 50]. Rather, Papin testified he saw a single PowerPoint slide about audit trails during his residency orientation more than seven years before trial. ROA.5959-63. He could not remember who showed him the slide or who he was with at the time. He also had no idea how to decipher some of the data within the document or explain how such data related to each entry as a whole. ROA.5962-64.

Papin also admitted he had never seen the audit trail document before he filed his lawsuit. ROA. ROA.5959. Instead, he argues he was competent to identify the document because his lawyer showed it to him while he prepared for his trial testimony. Br., at 38-39 [Doc. 50]. There is no proof in the record he ever reviewed the audit trail exhibit or any similar document while he was employed at UMMC or at any point before his attorney was preparing him for his trial testimony. *Id*. at 38.; ROA.5739. Papin was not "trained to understand UMMC's audit trails…." Br., at 39 [Doc. 50]. Rather, he recited certain data from the proffered exhibit in a last-ditch effort to introduce it into evidence.

1

Papin is also incorrect that his unsuccessful attempt to introduce the audit trail document through Elizabeth Toony "bolstered" his own testimony about it. *Id*. The District Court correctly sustained UMMC's objection that Ms. Toony, who had *more* experience with audit trail documentation than did Papin, could not sponsor the document because she "has no reason to see a document like this and she hasn't seen this document before." ROA.5350. Papin does not explain how Ms. Toony's testimony, which was not sufficient to authenticate the document on its own, could combine with his own, which demonstrated even less direct knowledge, to create a foundation for the document.

Papin's protestation that he used the audit trail document for the "totally orthodox purposes" of proving up a timeline and impeaching the testimony of Dr. Megan Mahoney does not obviate the fact that those purposes were unduly prejudicial considering Papin's unfamiliarity with the document. Papin's testimony about the audit trail simply could not have proven "that Dr. Mahoney had monitored the patient over seventy times" because Papin could not explain what the document meant. Br., at 42-43 [Doc. 50].

Papin's argument that UMMC did not properly object to testimony about the audit trail document is incorrect. UMMC identified its objections to the audit trail, including a Rule 403 objection, in the Joint Pretrial Order entered before trial began. ROA.7684. UMMC reiterated its objections when Papin tried to introduce

the exhibit through Ms. Toony, ROA.5347-50, and it stated them again when Papin sought to introduce the document through his own testimony. ROA.5657-62. The District Court overruled these objections and admitted the exhibit when Papin's counsel offered it during his direct examination of Plaintiff. ROA.5662. UMMC was within its rights to cross-examine Papin about the document without continually renewing its objections to the evidence. *See* FED. R. EVID. 103(b) ("Once the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). The District Court erred in admitting the audit trail document.

2.   *Plaintiff's educational expenses should not have been admitted.*

Papin first argues UMMC failed to preserve its objections to evidence about educational expenses unrelated to his employment at UMMC. Papin did not raise this argument below and has therefore waived it. Even if Plaintiff had raised the issue in response to UMMC's Motion for a New Trial, the record is clear that UMMC objected to this evidence. UMMC raised multiple objections, including a Rule 403 objection, to Plaintiff's student loan documents in the Joint Pretrial Order. ROA.7682, at P-10. It renewed those objections at trial before the Court admitted the evidence. ROA.5828-29.

Papin makes only a passing attempt to justify the admission of his educational expenses on relevance grounds, arguing that his "story would be

3

incomplete without this aspect of his medical school experience." Br., at 46 [Doc. 50]. However, the financial aspect of Papin's medical school experience was not at issue. The parties agreed he had completed medical school, and UMMC did not dispute he was qualified to apply for a surgical residency. The amount of money Papin paid or borrowed to complete medical school did not make it more or less probable that UMMC breached a contract with Papin nearly two years after he graduated. *See* FED. R. EVID. 401(a).

Papin further argues the proof about education expenses was "totally true and did not trigger any prejudicial emotions at all, let alone undue prejudices." Br., at 47 [Doc. 50]. He acknowledges this evidence was "surplus proof," but he fails to address the fact that (1) it was not connected in any way to his alleged emotional distress and (2) the jury clearly considered these expenses in rendering its verdict. The educational expense proof was unduly prejudicial, and the District Court erred in admitting it.

3.   ***The jury instructions were erroneous.***

Papin acknowledges UMMC objected to the District Court's use of a contract formation jury instruction without language requiring actual authority for a public contract, but he claims UMMC waived its objection because it did not "properly" request an alternate instruction under Rule 51(d)(1)(B). In fact, the Court's proposed contract formation instruction was erroneous because it was

4

incomplete, and UMMC properly objected under Rule 51(d)(1)(A), which does not require presentation of an alternative instruction. Papin did not raise this issue in response to UMMC's Motion for New Trial, so he has waived it. Even if an alternate instruction was required, UMMC's objection was sufficiently specific to inform the District Court about the nature of the proposed addition. ROA.6219.

Papin argues the Court's instruction was "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury," Br., at 49 [Doc. 50] (*citing Gil Ramirez Group, L.L.C. v. Marshall*, 765 Fed. App'x. 970, 979 (5th Cir. 2019)), but he does not argue UMMC's request to modify the instruction was incorrect – to the contrary, he admits UMMC's proposed change would have been "allowed." If UMMC's proposed change would not have resulted in an incorrect statement of law, the District Court's instruction was incomplete and erroneous as a matter of law.

Papin is correct that UMMC's assignment of error regarding the District Court's punitive damages instruction is resolved by the question of whether punitive damages were available in this matter. For all the reasons set forth in UMMC's primary brief, they were not.

Finally, the District Court erred in instructing the jury on emotional distress damages. UMMC properly preserved this argument by objecting to the Court's proposed instruction and describing the omissions with particularity. ROA.6219-

20. Again, Papin does not argue UMMC's objection included an incorrect statement of the law – only that the District Court had discretion to fashion jury instructions and that any error was harmless. For the reasons in UMMC's primary brief, the record did not contain sufficient evidence to justify the emotional distress instruction.

The purpose of jury instructions is not, as Plaintiff argues, to give attorneys a "hook" for their jury arguments – it is "to advise the jury on the proper legal standards to be applied in determining issues of fact as to the case before them." *Daly v. Moore*, 491 F.2d 104, 108 (5th Cir. 1974). The jury was not correctly instructed in this case.

## CONCLUSION

For the reasons stated in UMMC's primary brief, the Court should affirm the District Court's order vacating the jury verdict. However, if the Court does not affirm that ruling, UMMC is entitled to a new trial. UMMC respectfully requests such other relief as the Court deems appropriate under the circumstances.

THIS, the 11th day of December 2023.

Respectfully submitted,

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER

*/s/ Paul B. Watkins, Jr.*
PAUL B. WATKINS, JR. (MB NO. 102348)

6

                        J. ANDREW MAULDIN (MB NO. 104227)
                        *Attorneys for Appellee and Cross-Appellant*

OF COUNSEL:

Mayo Mallette PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
pwatkins@mayomallette.com
dmauldin@mayomallette.com

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FED. R. APP. P. 28.1(e)(2)(B)(i) because this brief contains 1,349 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), according to the word count of the word processing system used to prepare the document.  This brief complies with the typeface requirements of FED. R. APP. R. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.79.2 in Times New Roman font 14-point type face, except for footnotes, which were prepared in Times New Roman 12-point type face.

> */s/ Paul B. Watkins, Jr.*
> PAUL B. WATKINS, JR.